IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NIKKO TALLEY,                          *

     Plaintiff,                    *

     v.                            *

                                 Civil Action No. RDB-21-347

ANNE ARUNDEL COUNTY,                   *
MARYLAND, *et al.*,
                             *

     Defendants.                   *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## MEMORANDUM OPINION

This case arises from the arrest and prosecution of Plaintiff Nikko Talley ("Talley," or "Plaintiff") for the November 4, 2016 murder of Trayvon Briscoe. Plaintiff, now acquitted of all charges, brings this action against Defendants Kelly M. Harding ("Detective Harding"), Jason R. DiPietro ("Detective DiPietro"), Timothy Altomare ("Altomare" or "Chief Altomare"), and Anne Arundel County, Maryland (the "County"), claiming that the Defendants violated his rights under the state and federal constitutions, and the common law of Maryland, by concealing exculpatory facts from judicial decisionmakers when applying for an arrest warrant and criminal charges. (Am. Compl., ECF No. 13 ¶¶ 2–3.) Plaintiff further asserts that Anne Arundel County has adopted a "policy or custom" of malicious prosecution, suppression of evidence, and coercive interrogation tactics. (*Id.* ¶¶ 130–80.)

Now pending are two Motions to Dismiss—one filed by the County, and another by Detective Harding, Detective DiPietro, and Chief Altomare (collectively, the "Individual Defendants"). (ECF Nos. 14, 15.) The parties' submissions have been reviewed and no hearing

is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, the Defendants'

Motions to Dismiss are GRANTED IN PART and DENIED IN PART. Specifically, the

Motion to Dismiss filed by the Individual Defendants (ECF No. 15) is GRANTED as to

Defendant Altomare. All claims against him are dismissed with prejudice and he will no longer

be a party to this action. That Motion to Dismiss (ECF No. 15) is DENIED with respect to

Defendants Harding and DiPietro, and Counts I-IV will proceed against them in their

individual capacities. With respect to the Motion to Dismiss filed by the County (ECF No.

14), that motion is GRANTED as to Counts IV-VII, and they are dismissed with prejudice.

That motion (ECF No. 14) is DENIED with respect to Count III. Accordingly, for the

reasons that follow, Counts I through IV will proceed against Defendants Harding and

DiPietro, and Count III will proceed against Defendant Anne Arundel County.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in

a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found.*

*v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.)*

*Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). The Court may also consider certain sources outside

the complaint that are properly deemed part of the pleadings, such as documents incorporated

into the complaint by reference and matters of public record that are subject to judicial notice.

*Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Sec'y of State for Defence v. Trimble*

*Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  Except where otherwise indicated, the

following facts are derived from Plaintiff's Amended Complaint, and accepted as true for the

purpose of Defendants' Motions to Dismiss.

Plaintiff Nikko Talley is a resident of Maryland. (Am. Compl. ¶ 10.) Defendant Anne Arundel County is a municipal corporation organized under the Constitution of the State of Maryland. (*Id.* ¶ 11.) During the events at issue in this case, Defendant Timothy Altomare was the Anne Arundel County Chief of Police, and Defendants Kelly M. Harding, #1309, and Jason R. DiPietro, #1249, were police detectives employed by the Anne Arundel County Police Department. (*Id.* ¶¶ 11–14.) At all relevant times, the Individual Defendants were acting in their official capacities. (*Id.*)

## I.   Police Investigation of the Murder of Trayvon Briscoe

Plaintiff's criminal prosecution arose from the murder of Trayvon Dashawn Briscoe. (*Id.* ¶ 1.) On November 4, 2016, Talley, Briscoe, and mutual friends left a friend's house to visit "Daddy Pa's," a nearby corner store. (*Id.* ¶ 16.) As they left the store and walked along Levin Road, an African-American man approached the group and pulled a mask over his face. (*Id.* ¶ 17.) Plaintiff immediately recognized this man as Aaron Thomas ("Thomas"). (*Id.* ¶ 18.) Talley urged Briscoe to run and then fled into a nearby alleyway, but Briscoe remained where he was. (*Id.*) From the alley, Plaintiff watched as Thomas approached Briscoe, drew a gun, and held him at gunpoint. (*Id.* ¶ 19.) Briscoe punched Thomas, and Thomas fired "numerous times." (*Id.*) Talley continued to run until he reached his girlfriend's home. (*Id.* ¶ 20.) Briscoe was pronounced dead at the scene. (*Id.* ¶ 21.)

Investigating officers conducted forensics and canvassed nearby homes for witnesses. (*Id.* ¶ 22.) One resident, William Barrett Jr. ("Barrett"), told police that Briscoe had fought a member of a local Bloods gang only a few days before his death. (*Id.* ¶ 24.) Barrett explained that the gang contained a member named "Aaron," who drove a white Nissan Altima—and

recalled that he had seen the shooter get out of an identical vehicle shortly before the murder. (*Id.* ¶¶ 25, 26.) Barrett's insights were corroborated by several witnesses and "[m]ultiple video recordings" placing a white Nissan Altima in the vicinity of the shooting, at least one of which allegedly captured the Nissan proceeding to the crime scene. (*Id.* ¶¶ 23, 26.) According to the Amended Complaint, police concluded that this Nissan belonged to Thomas—the police report assembled by investigators details the Barrett interview, and identifies the white vehicle as "presumably Aaron Thomas' white Nissan Altima." (*Id.* ¶ 26.; *see also* Investigative Report, ECF Nos. 18-5, 19-5, at 9–12.)

Moreover, approximately one week after his first interview, Barrett contacted Detective Carbonaro, claiming that Thomas was threatening him to stay silent about Briscoe's murder. (Am. Compl. ¶ 27.) Barrett claimed that Thomas had approached him one week after Briscoe's death, displaying a semi-automatic pistol and warning him to stop posting about Briscoe's death on social media. (*Id.* ¶ 28.) Thomas later drove to Barrett's residence in his white Nissan, "slowly rolling by" and pointing a finger at his home. (*Id.* ¶ 29.).

The police interviewed two additional witnesses during this investigation. One witness, Jordan Fischer ("Fischer"), did not see the shooting, but claimed to have seen a man wearing a grey sweatshirt, grey sweatpants, and a mask approach the scene just before the shooting— and flee through a nearby alley with an automatic pistol in his right hand. (*Id.* ¶ 35.)[1] Another, Kyrom Burris ("Burris"), told the detectives that he was with Talley and Briscoe at the time of the murder. (*Id.* ¶ 34.) Burris claimed that an African American male in a black mask had

---

[1] Fischer was shown a lineup that did not involve either Plaintiff or Thomas, and was unable to make a positive identification. (*Id.*).

approached the group, drawn a handgun, shot Briscoe multiple times, and fled in a white vehicle. (*Id.*). Burris also claimed Talley had run away from the scene before the shooting. (*Id.*) According to the Amended Complaint, "the detectives press[ed] Mr. Burris to claim that Plaintiff was the shooter," but "Mr. Burris refused to change his story." (*Id.*).

## II.    Plaintiff's Arrest and Interrogation

According to a certified copy of the Anne Arundel County Circuit Court File, witness statements and video surveillance identified the suspect in the Briscoe shooting as "a black male subject wearing a grey shirt, grey pants, white shoes, and a black face mask." (Circuit Ct. File, ECF Nos. 14-2, 15-2, at 005.) The day after the shooting, an investigator noticed a black male wearing the described clothing, and recognized him as Nikko Talley based on a prior interaction. (*Id.*) The investigators brought Talley in for an initial interview, attended by Detective DiPietro and Detective Harding. (*Id.*) During this interview, Talley told the Detectives he was present when Briscoe was killed. (*Id.*) He claimed to have been wearing "a light grey sweat shirt with white shoes and a black hat" on the night of the murder, but acknowledged that he was the person depicted in the police surveillance video. (Investigative Report 13.) Neither the Amended Complaint, the Circuit Court File, nor the Investigative Report suggest that Plaintiff identified Thomas as the killer during this interview.

After Talley's initial interview, the Detectives formally applied for criminal charges against him for Briscoe's murder, and against Thomas for firearm possession. (Am. Compl. ¶ 30.) The Detectives obtained arrest warrants for both Plaintiff and Thomas, and search warrants for their residences. (*Id.* ¶ 31.) The ensuing search of Thomas' home revealed a .357 Taurus revolver in his bedroom and a white Nissan Altima parked near his residence. (*Id.* ¶

32.) Comparatively, officers did not find any firearms in Plaintiff's home. (*Id.* ¶ 33.) Talley was arrested on November 16, 2016. (Circuit Ct. File 002.) Thomas was neither interviewed nor charged in connection with Briscoe's murder. (Am. Compl. ¶ 41.)

According to the Amended Complaint, Plaintiff suffers from a mental disability that impacts his reading and verbal comprehension. (*Id.* ¶ 45–48.) On two previous occasions, Detectives Harding and DiPietro had accommodated his disability by allowing his mother to attend police interviews and assist with his comprehension. (*Id.* ¶¶ 43–44, 50.) After Plaintiff's arrest in November 2016, the Detectives interviewed him in custody, and refused to allow his mother to assist him. (*Id.* ¶ 54). Plaintiff alleges that at this second interview, the Detectives exploited his disability by refusing to discuss why he had been arrested until he signed a written waiver of his *Miranda* rights. (*Id.* ¶ 55.) Before trial, Plaintiff filed a Motion to Suppress, arguing that his *Miranda* waiver was unconstitutionally inadequate as he "did not understand what was going on, did not know why he was being taken to the police station, and did not know what he was signing." (*Id.* ¶ 56.) Evaluating a video of the interview and testimony from Plaintiff's mother, the trial court granted Plaintiff's motion, finding the Detectives had coerced him into waiving his *Miranda* rights. (*Id.* ¶ 57–59.)

## III. Plaintiff's Prosecution and Acquittal

On December 9, 2016, just under one month following his arrest, Talley was indicted by a grand jury, and formally charged with Briscoe's murder. (*See* Circuit Ct. File 015–016.) He was booked and held without bail through the conclusion of his trial. (Am. Compl. ¶ 62.) The Office of the State's Attorney provided discovery material to Plaintiff's lawyer, Ivan J. Bates,

on January 3, 2017. (Circuit Ct. File 030–032.)[2] On March 1, 2017, Plaintiff waived his right to have his case tried within 180 days. (*Id.* 037.) On March 28, 2017, Plaintiff's attorneys filed a Motion to Suppress the second interview recorded upon his arrest. (*Id.* 038–044.) This motion was granted on January 5, 2018. (*Id.* 072.) On January 22, 2018, the case went to trial. (*Id.* 074.) The State presented eighteen witnesses, while Talley presented five witnesses, including Barrett and Burris. (*Id.* 077-078.) On January 29, 2018, the jury returned a verdict of not guilty. (*Id.* 079-080.)

According to the Plaintiff, Defendants had "exculpatory evidence that would prove Plaintiff's innocence" and "strong evidence pointing to another person as the true culprit," but "failed to provide any of this exculpatory evidence to any judicial officer, magistrate, judge or the Anne Arundel County State's Attorney's Office." (Am. Compl. ¶¶ 36–39, 63.) Talley claims that the Detectives ignored or concealed the evidence corroborating his version of events and pinpointing Thomas as the killer when applying for warrants and criminal charges. (*Id.* ¶ 37.) Plaintiff also alleges that the Detectives repeatedly ignored community members who attempted to contact the Anne Arundel County Police Department with exculpatory evidence. (*Id.* ¶¶ 38–40.) "Had the Defendants disclosed all exculpatory facts, there would have been no findings of reasonable suspicion or probable cause at any stage, and no arrest, charging, prosecution or trial of the Plaintiff." (*Id.* ¶ 63.)

---

[2] This discovery included police reports, the Indictment, and Statement of Charges by Aaron Thomas. (*Id.*) On February 3, 2017, the Office provided additional discovery—including an updated witness list, search warrants, the *Miranda* warnings signed by Talley and Thomas, and recorded interviews of Talley, Barrett, and Burrus. (*Id.* 034-035.) The State also provided a certified copy of a 911 call. (*Id.*)

Plaintiff alleges that the Detectives' "brief and inadequate investigation," and the interrogation techniques employed in his interview, were the product of an unconstitutional practice routinely employed by the Anne Arundel County Policy Department, and endorsed by Police Chief Altomare. (*Id.* ¶ 65.) Two days following Plaintiff's acquittal, the Annapolis Capital Gazette ran an article reporting that Altomare "st[ood] by the officers found to have improperly coerced a murder suspect into waiving his rights to not comment without a lawyer present." (*Id.* ¶ 66 (alteration in original).) The Chief was quoted as saying that the Detectives used only "permissible strategic deception," that their tactics were "very standard" and "very smart," and that he would personally "use (a suspect) being off balance to [his] advantage." (*Id.* ¶ 67.) Upon his retirement in July of 2020, Chief Altomare published another op-ed in which he decried the "movement in this nation and in this country to remove the teeth of the police." (*Id.* ¶ 72.)

## IV.    Procedural History

On January 29, 2021, Plaintiff Nikko Talley filed his initial Complaint against Defendants Anne Arundel County, Detective DiPietro, Detective Harding, and Chief Altomare in the Circuit Court for Anne Arundel County. (Compl., ECF No. 2 ¶ 1). On February 11, 2021, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441–1447. (Notice of Removal, ECF No. 1.) On March 12, 2021, Plaintiff filed the operative seven-count Amended Complaint against Defendants Anne Arundel County, Detective Harding, Detective DiPietro, and Chief Altomare. (Am. Compl., ECF No. 13.) Counts I and II bring malicious prosecution claims against the Individual Defendants under 42 U.S.C. § 1983. Counts III and IV bring malicious prosecution claims against all four Defendants under the

Maryland Declaration of Rights and the common law. Count V brings a negligence action against Altomare and Anne Arundel County. Counts VI and VII bring claims solely against Anne Arundel County for adopting a "policy or practice" of malicious prosecution.

The County has filed a Motion to Dismiss. (County's Mot. to Dismiss, ECF No. 14.). Additionally, the Individual Defendants have filed a collective Motion to Dismiss. (Individual Defendants' Mot. to Dismiss, ECF No. 15.). The Defendants seek dismissal of all counts with prejudice, or summary judgment in the alternative, and have attached a certified copy of the Circuit Court File for this Court's consideration (Circuit Ct. File, ECF Nos. 14-2, 15-2, at 005.). Alternatively, and separately, the County requests the bifurcation of Counts VI and VII from the remainder of the Amended Complaint. (County's Mot. to Dismiss, 24–25). Plaintiff has filed his Responses in Opposition to the two pending motions. (Resp. to County, ECF No. 18; Resp. to Individual Defendants 19.). The Defendants have submitted Replies to Plaintiff's Responses. (County's Reply, ECF No. 20; Individual Defendants' Reply, ECF No. 21.).

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P 8(a)(2).  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotations omitted).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

While ruling on a motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166–67 (4th Cir. 2016). However, courts may consider extrinsic evidence in limited circumstances: First, a court may consider documents that are incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, a court "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)); *see also Chesapeake Bay Found., Inc. v. Severstal*

10

*Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) ("A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" (internal citation omitted)). Third, a court "may properly take judicial notice of matters of public record." *Philips*, 572 F.3d at 180. Considering such documents does not convert a motion to dismiss into one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

## ANALYSIS

Through his Amended Complaint, Plaintiff brings seven claims against the Defendants. Counts I and II bring a malicious prosecution claim under 42 U.S.C. § 1983 against the individual Defendants, Harding, DiPietro, and Altomare. (Am. Compl. ¶¶ 78–101.) Counts III and IV bring malicious prosecution claims against all four Defendants, including the County, under the Maryland Declaration of Rights, and the common law of Maryland. (*Id.* ¶¶ 77–124.) In Count V, Plaintiff raises a common law negligent hiring, retention, and supervision claim against Chief Altomare and the County. (*Id.* ¶¶ 125–29.) In Counts VI and VII, Plaintiff brings claims against the County alone for adopting a "policy or practice" of malicious prosecution. (*Id.* ¶¶ 130–80.) The Defendants respond by challenging the sufficiency of the complaint and invoking assorted forms of governmental immunity.

## I.   Governmental Immunity Claims

As a threshold matter, Anne Arundel County raises governmental immunity as a defense to Counts IV and V, Plaintiff's common-law claims. (County's Mot. to Dismiss 13). "Maryland law is well settled that a county (or municipality) generally enjoys immunity against common law tort liability arising out of acts that are governmental, as opposed to acts that are

private or proprietary." *Clark v. Prince George's Cty.*, 211 Md. App. 548, 557 (2013) (citing *DiPino v. Davis*, 354 Md. 18, 47 (1999)). Whether an entity is acting in a governmental or proprietary capacity turns on whether the activity is intended to "promote the welfare of the whole public" and is devoid of any "private interest." *Austin v. City of Baltimore*, 286 Md. 51, 53, 65 (1979). Maryland courts have consistently held that "[t]he operation by a county of its police department is quintessentially governmental." *Clark*, 211 Md. App. At 558; *see also Mora v. City of Gaithersburg*, 462 F. Supp. 2d 675, 697 (D. Md. 2006); *Williams v. Prince George's County*, 157 F. Supp. 2d 596, 604 (D. Md. 2001). As Plaintiff's claims arise out of the operation of the Anne Arundel County Police Department, the County is entitled to governmental immunity on Counts IV and V.

Plaintiff's attempts to overcome this immunity fall short. First, Plaintiff argues that the Local Government Tort Claims Act, Md. Code Ann., Cts. & Jud. Proc. §§ 5-301 et seq., waives the County's immunity "to the extent that its employees are determined to have acted within the scope of their employment and without malice or gross negligence." (Resp. to County 26.) This is incorrect. The Court of Appeals of Maryland has long held that "the LGTCA does not waive any preexisting immunity against suit held by the local government or its employees." *Rounds v. Maryland-Nat. Capital Park and Planning Com'n*, 441 Md. 621, 639 (2015); *Hansen v. City of Laurel*, 420 Md. 670, 679–80 n.5 (2011); *Williams v. Maynard*, 359 Md. 379, 394 (2000). Instead, the LGTCA designates a local government as a de-facto "insurer," obligated to indemnify its employees from tort liability unless they acted with malice or gross negligence. *Hansen*, 420 Md. at 680 n.5; *accord Rios v. Montgomery Cty.*, 386 Md. 104, 136 (2005).

Second, Plaintiff argues that applying governmental immunity to a negligent hiring claim violates the right to redress provided by Article 19 of the Maryland Declaration of Rights. (Resp. to County 26–29.) Article 19 "generally prohibits unreasonable restrictions upon traditional remedies or access to the courts." *Lee v. Cline*, 384 Md. 245, 265 (2004) (citation omitted). In *Cooper v. Rodriguez*, 443 Md. 680 (2015), the Court of Appeals held that applying public official immunity to cases featuring gross negligence violated Article 19 by creating a "void in liability." 443 Md. at 723–24. Due to the confluence of the Maryland Tort Claims Act, which waives sovereign immunity only to the extent of ordinary negligence, and public official immunity, which at the time protected government employees unless they acted with actual malice, plaintiffs would have been without a remedy against a public official who acted with gross negligence. *Id.* To avoid "a nonsensical result with potentially disconcerting consequences," the Court held that "gross negligence is an exception to public official immunity." *Id.*

Plaintiff insists that allowing the County to claim governmental immunity as a defense to a negligent hiring claim will create a void in liability, as "[t]he adequate management of a police department . . . is a duty that is owed by the respective government, not any particular officer or employee." (Resp. to County 28). Plaintiff's efforts in this very case bely this assertion: Plaintiff also alleges negligent hiring against Chief Altomare, whose public official immunity would be overcome if Plaintiff pled that he acted with either gross negligence or malice. *Cf. Cooper*, 443 Md. at 724. This argument is also broadly unpersuasive, as Maryland appellate courts have granted police departments governmental immunity in common law negligent hiring claims. *See, e.g., Clark*, 211 Md. App. at 557–59; *Leese v. Baltimore Cty.*, 64 Md.

13

App. 442, 450 (1985). As Plaintiff fails to overcome the County's assertion of governmental immunity, Defendant County's Motion to Dismiss is GRANTED IN PART, and Counts IV and V will be DISMISSED WITH PREJUDICE as against Anne Arundel County.

The Individual Defendants make a similar assertion in their Motion to Dismiss, claiming that they are immune from suit in their official capacity. (Individual Defendants' Mem. in Supp., ECF No. 15-1, at 10–11.). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *accord Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). Plaintiff fails to respond to this argument, and is therefore deemed to have waived his opportunity to contest dismissal. *See, e.g.*, *Wilson v. Detweiler*, 2020 WL 4053827, at *4 (D. Md. July 20, 2020) (dismissing identical claims as waived by Plaintiff's failure to respond). Accordingly, the Individual Defendants' Motion to Dismiss is GRANTED IN PART. Counts I, II, IV, and V will be DISMISSED WITH PREJUDICE as alleged against the Defendants in their official capacities. The Count III official-capacity claims against the Individual Defendants will merge with the Count III claim against the County. In all other respects, this suit will continue against the Individual Defendants in their individual capacities only.

## II.    Counts I and II – Constitutional Malicious Prosecution under 42 U.S.C. § 1983

The centerpiece of the Amended Complaint is Plaintiff's malicious prosecution claim: Plaintiff brings claims against the Individual Defendants under 42 U.S.C. § 1983 for violations of his Fourth Amendment right to be free from unreasonable searches and seizures (Count I),

and his Fourteenth Amendment protection against deprivation of liberty without due process

of law (Count II). The Individual Defendants claim qualified immunity, arguing that Plaintiff

fails to state a claim for a violation of his clearly established constitutional rights. (Individual

Defendants' Mot. to Dismiss 13.)

"Qualified immunity protects government officials from civil liability and suit 'insofar

as their conduct does not violate clearly established statutory or constitutional rights of which

a reasonable person would have known.'" *Attkisson v. Rosenstein*, No. RDB-20-0068, 2021 WL

978821, at *6 (D. Md. Mar. 16, 2021) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

"To determine whether an officer is entitled to qualified immunity, the court must examine

(1) whether the facts illustrate that the officer violated the plaintiff's constitutional right . . . ,

and (2) whether the right was clearly established at the time of the alleged event such that 'a

reasonable officer would have understood that his conduct violated the asserted right.'"

*Humbert v. Mayor & City Council*, 866 F.3d 546, 555 (4th Cir. 2017) (citing *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982)). "The burden of establishing a qualified immunity defense rests on

the official asserting the defense." *Wingate v. Fulford*, 987 F.3d 299, 302 (4th Cir. 2021) (citing

*Meyers v. Baltimore Cnty.*, 713 F.3d 723, 731 (4th Cir. 2013)).

The second inquiry is uncontested here:[3] Nowhere in either Motion to Dismiss do the

Defendants argue that the Fourth and Fourteenth Amendment rights Plaintiff claims are not

clearly established.[4] Accordingly, the Individual Defendants' qualified immunity defense—and

---

[3] Although the Supreme Court once required lower courts to address the two qualified immunity prongs in order, *Saucier v. Katz*, 533 U.S. 194, 201 (2001), courts today are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[4] This is for good reason. The Fourth Circuit has recognized malicious prosecution claims under 42 U.S.C. § 1983 since at least 1996. *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 182 (4th Cir. 1996). Regarding

their Motion to Dismiss—turns entirely on whether Plaintiff has stated a claim for a violation of his constitutional rights.

### A. Plaintiff States a Claim against Detectives Harding and DiPietro

To state a claim for malicious prosecution under 42 U.S.C. §1983, Plaintiff must allege that the Defendants "(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in the plaintiff's favor." *Burgess v. Baltimore Police Dep't*, 300 F. Supp. 3d 696, 708 (D. Md. 2018) (quoting *Humbert*, 866 F.3d at 555). It is abundantly clear that the Defendants seized Plaintiff pursuant to legal process, and that the proceedings terminated in his favor when he was acquitted on January 28, 2020. Accordingly, the only contested issues are (1) whether Plaintiff plausibly claims that he was arrested and detained without probable cause; and (2) whether Plaintiff's seizure is causally attributable to the Detectives.

Both issues are squarely addressed by Plaintiff's claim that the Detectives concealed exculpatory evidence in their application for an arrest warrant against Plaintiff. (Am. Compl. at ¶¶ 82, 83.) "A plaintiff arrested pursuant to a warrant may establish [an] arrest without probable cause by showing that the material statements in the warrant application contained intentional or reckless misrepresentations or omissions." *Niewenhous v. Burns*, No. DLB-20-

---

the Detectives, "the Supreme Court has made . . . clear that police officers cannot intentionally lie in warrant affidavits, or recklessly include or exclude material information known to them." *Miller v. Prince George's Cty.*, 475 F.3d 621, 630 (4th Cir. 2007) (citing *Malley v. Briggs*, 475 U.S. 335, 345 (1986); *United States v. Leon*, 468 U.S. 897, 922–23 (1984); *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)). As for Chief Altomare, "[t]he principle is firmly entrenched that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Shaw v. Stroud*, 13 F.3d 791, 801 (4th Cir. 1994) (citing *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984); *Orpiano v. Johnson*, 632 F.2d 1096 (4th Cir. 1980); *Withers v. Levine*, 615 F.2d 158 (4th Cir. 1980)).

231, 2021 WL 1222831, at *10 (D. Md. Apr. 1, 2021) (citing *Miller*, 475 F.3d at 627). Similarly, the principle that "subsequent acts of individual decisionmakers . . . break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure" does not apply where officers fail "to disclose exculpatory evidence to prosecutors." *Evans v. Chalmers*, 703 F.3d 636, 648 (4th Cir. 2012).

These claims are best analyzed under a framework set forth by the Fourth Circuit in *Miller v. Prince George's Cty.*, 475 F.3d 621 (4th Cir. 2007):

> [A] police officer violates the Fourth Amendment if, in order to obtain a warrant, he deliberately or 'with reckless disregard for the truth' makes material false statements or omits material facts. . . . With respect to omissions, 'reckless disregard' can be established by evidence that a police officer 'failed to inform the judicial officer of facts [he] knew would negate probable cause.'
>
> Moreover, in order to violate the Constitution, the false statements or omissions must be 'material,' that is, 'necessary to the [neutral and disinterested magistrate's] finding of probable cause.' . . . To determine materiality, a court must 'excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the "corrected" warrant affidavit would establish probable cause."

*Miller*, 475 F.3d at 627 (internal citations omitted).

Defendants insist that the evidence of probable cause was "overwhelming," and that "the subsequent acts of individual decisionmakers" insulate them from liability. (Individual Defendants' Repl. 2.) Plaintiff admitted in a pre-arrest interview that he was the grey-clothed individual caught on camera near the scene of the crime—and one eyewitness, Jordan Fischer, spotted a matching individual fleeing the crime with a handgun. (*Id.* 2–4.) Taken in isolation, these facts would likely establish probable cause for Briscoe's murder. *See Wilkes v. Young*, 28 F.3d 1362, 1365 (4th Cir. 1994) (holding that probable cause "only requires enough evidence to warrant a man of reasonable caution in the belief that an offense has been . . . committed").

However, Plaintiff claims that "the Application for Statement of Charges is based on cherry-picked information with glaring omissions, misleading statements, and outright inaccuracies." (Resp. to Individual Defendants 13.). According to the Amended Complaint, the Detectives failed to disclose exculpatory facts to "judicial officers, prosecutors, and other decision makers,"[5] including: (1) multiple reports that the shooter left in a white vehicle, contradicting Fischer's statements that the killer fled on foot; (2) Barrett's testimony drawing a connection between Aaron Thomas, the Nissan Altima, the Bloods, and Briscoe's murder; (3) Barrett's report that Thomas had threatened him in order to suppress further statements about the murder; and (4) multiple attempts by community members to provide exculpatory evidence. (Am. Compl. ¶¶ 36–40, 63.) Plaintiff claims these omissions were made "knowingly and intentionally, or with a reckless disregard for the truth," (*Id.* ¶¶ 83–84, 95–96, 106–07, 118–19.), and avers that the officers were aware of these details, as the police report describes the white vehicle spotted at the scene as "presumably Aaron Thomas' white Nissan Altima." (*Id.* ¶ 26; *see also* Investigative Report 9–12.) *Cf. United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998) ("[W]e examine the facts within the knowledge of arresting officers to determine whether they provide a probability on which reasonable and prudent persons would act."). Accepted as true, these omissions are material: Properly included in the warrant affidavit, they would implicate Thomas in Briscoe's murder, and "negate probable cause" as to Plaintiff. *Miller*, 475 F.3d at 627.

---

[5] Defendants repeatedly rebut this assertion by pointing out that "the Office of State's Attorney provided voluminous discovery to [Plaintiff's criminal defense attorney]," and that this evidence was "in the possession of Mr. Talley's attorney less than 90 days after his arrest and over eleven months before the jury trial." (*See, e.g.*, Individual Defendants' Mem. in Supp. 14–15.) However, Plaintiff claims that the Detectives omitted key exculpatory evidence in their applications for warrants and criminal charges, not that the prosecutor failed to make required disclosures during the underlying criminal case.

In short, Plaintiff has adequately pled facts to establish the probable cause and causation elements of his § 1983 claim. At this early stage, these specific allegations are sufficient to survive a motion to dismiss. Accordingly, Defendants Harding and DiPietro are not entitled to qualified immunity on Counts I and II at this stage of the proceedings, and their Motion to Dismiss is DENIED IN PART.

## B.  Plaintiff Fails to State a Claim against Defendant Altomare

Plaintiff claims that Chief Altomare is "liable for the unconstitutional and tortious conduct of his subordinates under supervisory liability." (Resp. to Individual Defendants 31.) Under 42 U.S.C. § 1983, government officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. Accordingly, § 1983 liability requires a showing that "'the official charged acted personally in the deprivation of the plaintiff's rights.'" *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (citation omitted). Nevertheless, a supervisor may be held liable on a theory "'that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter,* 737 F.2d 368, 372 (4th Cir. 1984)). To state a claim under this theory, a plaintiff must plead three elements:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and

(3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). "'[E]stablishing a pervasive and unreasonable risk of harm requires evidence that the conduct is widespread.'" *Wilkins v. Montgomery*, 751 F.3d 214, 226–27 (4th Cir. 2014) (quoting *Shaw*, 13 F.3d at 799) (alterations omitted). Additionally, "a plaintiff 'may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented, widespread abuses.'" *Id.*

The Amended Complaint fails to state a plausible claim for relief under this standard. Plaintiff alleges the existence of a widespread practice of "maliciously pursuing prosecution without probable cause, failing to conduct full and complete investigations, and routinely ignoring exculpatory evidence." (Am. Compl. ¶¶ 137, 162). He also claims Chief Altomare is responsible for "setting the policies, practice, and culture" of the Anne Arundel County Police Department, (*Id.* ¶¶ 111, 116), that he knew of these practices and approved of them, (*Id.* ¶ 13), and that he "took no steps at all to remedy the widespread abuse," evincing "a deliberate indifference" to constitutional rights. (*Id.* ¶¶ 139, 141, 145–46.)

These allegations require this Court to infer too much out of far too little. *See Wikimedia Found.*, 857 F.3d at 208 ("[U]nwarranted inferences, unreasonable conclusions, and naked assertions devoid of further factual enhancement are not entitled to the presumption of truth." (citation omitted)). Plaintiff's claims against Chief Altomare rest entirely on inferences drawn from Chief Altomare's comments quoted in the Annapolis Capital Gazette praising the Detectives' tactics as "standard" and "smart," his letter opposing efforts to curtail aggressive law enforcement tactics, and a total of four malicious prosecution cases filed against Anne Arundel County officials since 1992. (*Id.* ¶¶ 66–73, 80). Four alleged "isolated incidents" of

20

malicious prosecution in twenty-five years are too attenuated to indicate "pervasive" or "widespread" misconduct, *cf. Stroud*, 13 F.3d at 799, and Altomare's statements to the media do not plausibly demonstrate "tacit authorization" of misconduct or "continued inaction in the face of documented, widespread abuses." *Wilkins*, 751 F.3d at 227. *Cf. Iqbal*, 556 U.S. at 678 (requiring "more than the mere possibility of misconduct"). Accordingly, Altomare is entitled to qualified immunity as a matter of law, and his Motion to Dismiss IS GRANTED with regards to Count I and II.

## III.    Count III – Maryland Constitutional Malicious Prosecution

Count III of the Amended Complaint brings a malicious prosecution claim against all four Defendants under Articles 24 and 26 of the Maryland Declaration of Rights.[6] As Articles 24 and 26 of the Maryland Declaration of Rights "are construed *in pari materia* with the Fourth and Fourteenth Amendments," *Littleton v. Swonger*, 502 Fed. App'x. 271, 274 (4th Cir. 2012), the elements of malicious prosecution and the standard for probable cause are identical to the federal constitutional claim. *See Humbert*, 866 F.3d at 561 n.7; *e.g., Veney v. Prince George's Cnty.*, No. 1313, Sept. Term 2016, 2018 WL 1778644, at **2–4 (Md. Ct. Spec. App. 2018). "[T]he only major distinction between the state constitutional claims and the federal claims is that Maryland does not recognize the defense of qualified immunity for officials committing state

---

[6] Article 24 of the Maryland Declaration of Rights provides "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Md. Const. Declaration of Rights, Art. 24. Article 26 of the Maryland Declaration of Rights provides "[t]hat all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants . . . to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted." Md. Const. Declaration of Rights, Art. 26.

constitutional violations." *McDaniel v. Maryland*, No. RDB-10-00189, 2010 WL 3260007, at \*10 (D. Md. Aug. 18, 2010) (citation omitted); *see also Littleton*, 502 Fed. Appx. at 274 n.2. Accordingly, Plaintiff states a claim against the Detectives; their Motion to Dismiss will be DENIED with regards to Count III.

Plaintiff's claims against the County and Chief Altomare require a separate analysis. Plaintiff claims that these Defendants are vicariously liable for the Detectives' conduct under traditional principles of *respondeat superior*. (Am. Compl. ¶¶ 103, 111.) "Unlike in a §1983 action and unlike in an action for some common law torts, neither [a] local government official nor a local governmental entity has available any governmental immunity in an action based on rights protected by the State Constitution." *DiPino*, 354 Md. at 51; *Prince George's Cty. v. Longtin*, 419 Md. 450, 470 (2011); *Ashton v. Brown*, 339 Md. 70, 101 (1995) ("Maryland law ordinarily provides no immunity for public officials sued for violating state constitutional rights."). Accordingly, "local government entities . . . have *respondeat superior* liability for civil damages resulting from State Constitutional violations committed by their agents and employees within the scope of [their] employment." *DiPino*, 354 Md. at 51–52.

"Under the doctrine of *respondeat superior*, an employer is jointly and severally liable for the torts committed by an employee acting within the scope of employment." *Southern Mgmt. Corp. v. Taha*, 137 Md. App. 697, 719 (2001), *vacated on other grounds*, 367 Md. 564 (2002). "An employee's tortious conduct is considered within the scope of employment when the conduct is in furtherance of the business of the employer and is authorized by the employer." *Baltimore Police Depot v. Cherkes*, 140 Md. App. 282, 332 (2001) (quoting Tall *v. Board of School Comm'rs*, 120 Md. App. 236, 251 (1998)). An employee's misconduct will be considered "authorized"

by the employer if it is "incident to the performance of duties entrusted to the employee," *Ennis v. Crenca*, 322 Md. 289, 293–94 (1991), "regardless of whether the employer intended or consciously authorized the employee's actions." *Baltimore City Police Dep't v. Potts*, 468 Md. 265, 306 (2020). "[A]n employer 'may be held liable for the intentional torts of an employee where the employee's actions are within the scope and in furtherance of the employer's business and the harm complained of was foreseeable.'" *Id.* at 199.

Even egregious conduct by a police officer will be considered within the scope of his employment if the misconduct was "incidental to his general authority as a police officer." *Houghton v. Forrest*, 412 Md. 578, 592 (2010); *Potts*, 468 Md. at 307 (collecting previous cases). In *Baltimore City Police Department v. Potts*, 468 Md. 265 (2020), the Court of Appeals found that officers of the Baltimore Police Department had acted within the scope of their employment when they fabricated evidence to secure plaintiffs' arrest and prosecution. 468 Md. at 276–77.[7] Although "[a]ctions such as fabricating evidence and committing perjury are marked departures from the normal methods of engaging in common police activities," the Court held that officers' misconduct was "in furtherance of the Department's business, and . . . either authorized or incidental to actions that the Department authorized." *Id.* at 314–18. In reaching this conclusion, the Court observed that (1) the officers' status as officers had enabled them to commit the misconduct; (2) the officers' misconduct was interwoven with the authorized

---

[7] According to the stipulations, the officers had arrested both plaintiffs without probable cause, falsely attesting that each plaintiff had a handgun on their person. *Id.* at 276. Separately, the officers involved had been convicted as part of a broad federal racketeering conspiracy in which members of the Baltimore City Police Department misappropriated evidence from criminal defendants for personal gain. *Id.* at 278.

conduct of making arrests; and (3) at a general level, misconduct by the Gun Trace Task Force was foreseeable in light of recent federal racketeering charges. *Id.* at 317–18.

To support his *respondeat superior* claim, Plaintiff alleges that "Defendant County employed the individual Defendants as Anne Arundel County police detectives," and that the Detectives were acting "within the scope of employment with Anne Arundel County" at all relevant times. (Am. Compl. ¶¶ 11–14, 75).[8] Plaintiff's allegations against the Detectives arise from alleged omissions in statements to judicial decisionmakers—all made "in furtherance" of a County-authorized investigation and subsequent arrest. (*Id.* ¶¶ 36–40, 63.) *Accord Potts*, 468 Md. at 308 ("Generally, an officer's arrest of a person may be within the scope of employment . . . even if the arrest is not supported by probable cause."). This putative misconduct is analogous to the fabricated evidence addressed in *Potts*: Both "consist of taking authorized actions in unauthorized ways," and are incidental to each defendant's "general authority as a police officer." *Potts*, 468 Md. at 307. Accordingly, Plaintiff has sufficiently alleged that the Detectives were acting within the scope of their employment with Anne Arundel County, and the County's Motion to Dismiss will be DENIED as to Count III.

The same cannot be said for Chief Altomare. "The role of a chief of police with respect to subordinate police officers is that of a managing co-employee, not an employer, for purposes of respondeat superior." *Franklin v. Montgomery Cty.*, No. DKC-2005-0489, 2006 WL 2632298, at *19 (D. Md. Sep. 13, 2006) (citing *Cherkes*, 140 Md. App. at 332–33). A managing

---

[8] The County's sole response is that Plaintiff fails to state a claim against the individual Defendants. (ECF No. 14, at 5–10.) *See, e.g., Bradshaw v. Prince George's County*, 284 Md. 294, 299-302 (1979) ("[A] county's liability under this doctrine is derivative so that nonliability . . . of the employee precludes recovery from the principal-county."). As discussed above, this argument fails: Plaintiff states a claim against the Detectives for a violation of his state constitutional rights.

co-employee cannot be held vicariously liable for a subordinate's tortious conduct unless the subordinate was acting "with his consent or under his order or discretion." *Tedrow v. Deskin*, 265 Md. 546, 550–51 (1972). The Amended Complaint is entirely devoid of facts suggesting that Chief Altomare ordered the Detectives to suppress exculpatory evidence, or was otherwise "directly or indirectly, passively or actively" involved in Plaintiff's prosecution. (Individual Defendants' Mot. to Dismiss 6). Absent such evidence, Chief Altomare cannot be held directly or vicariously liable for Plaintiff's injuries. Chief Altomare's Motion to Dismiss will be GRANTED as to Count III.

## IV.    Count IV – Maryland Common Law Malicious Prosecution

Count IV brings a common law malicious prosecution claim against all Defendants. A common law malicious prosecution claim requires a plaintiff to plead four elements: (1) "a criminal proceeding instituted or continued by the defendant against the plaintiff;" (2) "without probable cause;" (3) "with malice, or with a motive other than to bring the offender to justice;" and (4) "termination of the proceeding in favor of the plaintiff." *Candelero v. Cole*, 152 Md. App. 190, 199 (2003). "[M]alice, though a separate element of the tort, may be inferred from the lack of probable cause." *DiPino*, 354 Md. at 55 (citing *Montgomery Ward v. Wilson*, 339 Md. 701, 719 (1995); *One Thousand Fleet Ltd. Partnership v. Guerriero*, 346 Md. 29, 37 (1997)). As discussed in Section I of this analysis, the County is entitled to governmental immunity on this claim, leaving only the Individual Defendants subject to suit.

The preceding analysis controls here. No party denies that Detectives Harding and DiPietro subjected Plaintiff to criminal proceedings, or that those proceedings terminated in Plaintiff's favor. Plaintiff successfully pleads that he was prosecuted without probable cause,

entitling him to a rebuttable inference of malice under Maryland law. *See DiPino*, 354 Md. at 55. Thus, Plaintiff states a claim for common law malicious prosecution, and the Detectives' Motion to Dismiss will be DENIED as to Count IV. For the reasons stated above, Plaintiff fails to state a claim against Chief Altomare. His Motion to Dismiss will be GRANTED as to Count IV.

## V.    Count V – Negligent Hiring, Supervision, and Retention

Count V of the Complaint brings negligent hiring, supervision, and retention claims against the County and Chief Altomare. Under Maryland law, "the tort of negligent selection, training, or retention, like any negligence action, requires the plaintiff to prove the existence of four elements: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff suffered actual injury; and (4) the injury proximately resulted" from the alleged breach. *Jones v. State*, 425 Md. 1, 18 (Md. 2012); *accord Buettner-Hartsoe v. Baltimore Lutheran High Sch. Assoc.*, No. RDB-20-3132, 2021 WL 2580385, at *11 (D. Md. Jun. 23, 2021). The County is entitled to governmental immunity on this claim, and Chief Altomare invokes public official immunity. It is unnecessary to reach the issue of public official immunity, as Plaintiff fails to provide any evidence in support of his claim.

The Amended Complaint alleges that Chief Altomare "had a duty to ensure Anne Arundel County Police Department officers were trained to conduct their law enforcement activities within constitutional and common law prohibitions against malicious prosecution," and that he breached this duty "by failing to train officers to meet the obligations described and by affirmatively permitting violations of the constitutional and common law prohibitions against malicious prosecution." (Am. Compl. ¶¶ 126–27.) Maryland law makes clear that law

enforcement agencies owe citizens a duty to adequately train officers. *See Jones*, 425 Md. at 25. However, Plaintiff's allegations of breach are conclusory. Plaintiff offers no factual allegations of putative deficiencies in the training provided to Anne Arundel County police officers, and no evidence for his conclusion that Altomare affirmatively permitted the alleged misconduct. Absent factual support, Count V fails to state a claim for relief that is plausible on its face. *Cf. Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Accordingly, Chief Altomare's Motion to Dismiss is GRANTED with regards to Count V.

## VI.   Counts VI and VII – *Monell* and *Longtin* Pattern or Practice Claims

Counts VI and VII bring claims against the County under *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978), and *Prince George's County v. Longtin*, 419 Md. 450, 494-98 (2011), asserting that the Anne Arundel Police Department "maintained policies, customs, patterns, and practices in its police department of violating the constitutional rights of people in the County to be free from malicious prosecution." (Am. Compl. ¶¶ 130–79.). The County moves to dismiss these claims, or in the alternative, to bifurcate them for a separate trial pursuant to Federal Rule of Civil Procedure 42(b). (County's Mot. to Dismiss 1). *See Brown v. Bailey*, RDB-11-1901, 2012 WL 2188338, at *4 (D. Md. June 13, 2012) (finding it "appropriate and often desirable" to bifurcate *Monell* claims against a municipality from direct liability claims against individual police officers). As Plaintiff fails to state a claim under *Monell* and *Longtin*, there is no need to address the County's motion to bifurcate.

In *Monell*, the United States Supreme Court held that local government bodies may be held liable under 42 U.S.C. § 1983 if the execution or implementation of an official "policy or

custom" inflicts the plaintiff's constitutional injury. 436 U.S. at 694–95. As "local governments are responsible only for 'their *own* illegal acts,'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011), "liability attaches 'only where the municipality itself causes the constitutional violation at issue.'" *Grim v. Baltimore Police Dep't*, No. ELH-18-3864, 2019 WL 5865561, at *8 (D. Md. Nov. 8, 2019) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). "[A] viable § 1983 *Monell* claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights." *Johnson v. Baltimore Police Dep't*, No. ELH-19-00698, 2020 WL 1169739, at *30 (D. Md. Mar. 10, 2020) (citing *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), *cert. denied*, 547 U.S. 1187 (2006); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003)). "*Longtin* claims are essentially Maryland's version of *Monell* claims," *Grim*, 2019 WL 5865561, at *26, and will be analyzed in tandem.

As the Fourth Circuit noted in *Lytle v. Doyle*, 326 F.3d 463 (4th Cir. 2003), a plaintiff may plead the existence of an unconstitutional policy or custom in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'

326 F.3d at 471 (citing *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). Plaintiff offers several barebones assertions of an express policy, approval by county decisionmakers, or

inadequate police training. (*See, e.g.*, Am. Compl. ¶¶ 136, 143, 147, 152, 161, 168, 170, 177.) These allegations are insufficiently pled to survive a motion to dismiss.[9]

Plaintiff's strongest claim is that the County has "permitted and tolerated a pattern and practice of unjustified, unreasonable, and unlawful abuse[]" that is "so widespread as to rise to the level of official policy promulgated by Anne Arundel County." (*Id.* ¶¶ 135, 160). To state a *Monell* claim based on condonation, a plaintiff must "point to a 'persistent and widespread practice of municipal officials', the 'duration and frequency' of which indicate that policymakers (1) had actual and constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" *Owens v. Balt. City State's Atty's Office*, 767 F.3d 379, 402 (4th Cir. 2014) (citing *Spell v. McDaniel*, 824 F.2d 1380, 1386–91 (1987)). "Both knowledge and indifference can be inferred from the 'extent' of employees' misconduct." *Id.*

Alleging such a practice requires a plaintiff to plead prior instances of similar conduct. *See Longtin*, 419 Md. at 497 (pointing to plaintiff's "multitudinous evidence that his experience was not an isolated incident"). In *Chestnut v. Kincaid*, No. RDB-20-2342, 2021 WL 1662469 (D. Md. Apr. 28, 2021), plaintiffs wrongfully convicted of felony murder brought a *Monell* claim against the Baltimore Police Department, alleging a policy of fabricating and suppressing evidence in murder trials. 2021 WL 1662469, at **5, 15–16. The complaint detailed "extensive factual allegations" of "numerous deficient investigations" featuring "fabrication of evidence

---

[9] To state a *Monell* claim based on inadequate training, a plaintiff must plead facts that describe: "(1) the nature of the training; (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct result[ed] from said training." *Chestnut v. Kincaid*, No. RDB-20-2342, 2021 WL 1662469 (D. Md. Apr. 28, 2021); *Drewry v. Stevenson*, WDQ-09-2340, 2010 WL 93268, at *4 (D. Md. Jan. 6, 2010), *aff'd*, 583 F. App'x 180 (4th Cir. 2014). The foregoing analysis of Count V is dispositive here: Plaintiff offers no facts describing "the nature of the training" provided to Anne Arundel County police officers, and fails to plausibly allege that any defects in this training are a "deliberate and conscious" choice by Anne Arundel County. *Cf. Chestnut*, 2021 WL 1662469, at *15.

through coercion and threats and the suppression of exculpatory evidence." *Id.* at **2–5, 16. This Court denied BPD's motion to dismiss, reasoning that these allegations painted "a disturbing picture of a police department that turned a blind eye to the suppression of exculpatory evidence by its officers in murder investigations." *Id.* at **15–16. Similarly, in *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379 (4th Cir. 2014), the Fourth Circuit reversed this Court's grant of BPD's motion to dismiss a complaint that alleged multiple "[r]eported and unreported cases" and "numerous 'successful motions'" to evidence a custom of "knowingly and repeatedly suppressing exculpatory evidence in criminal prosecutions." 767 F.3d at 403. Although the complaint did not cite any of these cases, the Fourth Circuit noted that the "brief, but non-conclusory" allegations of these cases and motions, "if true, would buttress [plaintiff's] legal conclusion." *Id.*

Plaintiff's Amended Complaint nowhere approaches the detail offered in these cases. Plaintiff alleges that the County maintained a policy "of violating the constitutional rights of people in the County to be free from malicious prosecution in violation of the 4th and 14th Amendments" by "maliciously pursuing prosecution without probable cause, failing to conduct full and complete investigations, and routinely ignoring exculpatory evidence." (Am. Compl. ¶¶ 133–34, 137, 158–59, 162.). Nevertheless, he fails to plead that this conduct is sufficiently "frequent" and "widespread" to establish a tacit policy by condonation. *Cf. Owens*, 767 F.3d at 402. He offers only four examples from the past twenty-five years, only two of which involved conduct even remotely similar to the suppression of evidence and coercive interrogation techniques that caused the alleged injuries in the present case. (*Id.* ¶ 180.) These claims fall short of the volume of cases alleged in *Owens*, and nowhere approach the "extensive

factual allegations" provided in *Chestnut*.[10] Without sufficient allegations that Plaintiff's treatment is anything more than an "isolated incident," see *Longtin*, 419 Md. at 497, Plaintiff fails to state a claim for *Monell* and *Longtin* liability against Anne Arundel County, and the County's Motion to Dismiss is GRANTED with regards to Counts VI and VII.

## CONCLUSION

For the foregoing reasons, each pending Motion to Dismiss (ECF Nos. 14, 15) is GRANTED IN PART and DENIED IN PART. Specifically, the Motion to Dismiss filed by the Individual Defendants (ECF No. 15) is GRANTED as to Defendant Altomare. All claims against him are dismissed with prejudice and he will no longer be a party to this action. That same motion (ECF No. 15) is DENIED with respect to Defendants Harding and DiPietro. Counts I-IV will proceed against the Detectives in their individual capacities. With respect to the Motion to Dismiss filed by the County (ECF No. 14), that motion is GRANTED as to Counts IV-VII, and these counts are dismissed with prejudice as against the County. That motion (ECF No. 14) is DENIED with respect to Count III, which will proceed against Defendant Anne Arundel County.

A separate order follows.

Dated September 17, 2021.

_____/s/_____
Richard D. Bennett
United States District Judge

---

[10] Chief Altomare's statements in his editorial praising the Detectives do not significantly supplement this analysis. As discussed above, these statements are too attenuated to plausibly establish that Chief Altomare had embraced a practice of unconstitutional interrogation tactics—or that his views may be fairly attributed to Anne Arundel County. *See Wikimedia Found.*, 857 F.3d at 208 ("[U]nwarranted inferences, unreasonable conclusions, and naked assertions devoid of further factual enhancement are not entitled to the presumption of truth." (citation omitted)).